14105

STATE v. BOLIN

(180 S. E., 809)

*Messrs. P. D. Barron* and *L. G. Southard,* for appellant,

*Mr. S. R. Watt,* Solicitor, for the State.

July 8, 1935.

The opinion of the Court was delivered by Mr. Justice Bonham.

At the March, 1934, term of the Court of General Sessions for Cherokee County E. B. Bolin, the appellant, was indicted for murder of one S. M. Cash. At the same term he was tried before Judge E. C. Dennis and a jury, was

convicted of manslaughter, and was sentenced. An appeal was thereupon taken to this Court.

There are altogether fourteen exceptions, eleven being in the original transcript, and three in the appendix, which appendix constitutes an appeal from the order of Judge Dennis settling the case.

A new trial must be granted, hence we will not discuss or recite any of the facts of the case as they appear in the transcript. We will confine ourselves to a discussion of the exceptions.

T. W. True, Jr., was offered by the State as a witness to testify, and during his cross examination Mr. Southard asked of him, as to the chief of police of Columbia, this question: "If he swears your reputation in Columbia is that of a thief, a racketeer and a gangster   *   *   *."

Later on the solicitor said: "I object to his calling a man a gangster and a racketeer. It is not for him to say what he is; it is for the jury to pass on that."

Whereupon, the trial Judge made this remark: "I think probably the witness is entitled to respect." And this statement of the trial Judge constitutes the basis for the first exception. This exception cannot be sustained for the reason that it does not appear that the remark of the trial Judge was in any way prejudicial to the appellant. True was cross examined thoroughly as to where he had lived, the number of times he had been arrested, the charges he had been arrested for; and the chief of police of Columbia did not appear and testify that the reputation of True in Columbia was that of a thief, a racketeer, and a gangster. Ordinarily the rule is that a witness is entitled to respect. This exception is therefore overruled.

When True was on the witness stand, Mr. Southard asked this: "Hadn't been but five days since you started to hold up a mill pay roll in Greenville?"

Whereupon, the trial Judge remarked, "Mr. Southard, if you are going to testify you had better go on the stand."

This statement of the trial Judge constitutes the basis of the second exception. This exception cannot be sustained. The alleged question was not a question, but was a statement, and the Judge so took it to be. Moreover, in the trial of cases, attorneys in their enthusiasm frequently make statements. It is the duty of the trial Judge to conduct the trial in accordance with the established rules; and very frequently it is necessary to remind an attorney that he is making a statement and not asking a question. This is, doubtless, what Judge Dennis had in mind when he made the statement. In view of the statement which provoked this remark, we see no error. Exception two must be overruled.

As to exception three: The testimony was that T. W. True, Jr., and several male and female companions were arrested in Greenville. There were some eight in all. Their photographs were taken; these were offered by the appellant, E. B. Bolin, and the trial Judge ruled them out. It is contended that the object for offering these photographs was to impeach the witness, T. W. True, Jr., "and to show to the jury just who his associates and confederates were." The trial Judge was correct in his ruling, for the reason that had the Court allowed these photographs to have been offered in evidence, it would have had to inquire as to just who were the other members of this group. It was too remote, irrelevant, and had no bearing on the case whatsoever. Exception three must, therefore, be overruled.

Exception four complains that the trial Judge erred in not admitting the record of the District Court of the United States for the Middle District of the State of North Carolina, showing that S. M. Cash had been convicted in that Court for conspiracy, for violating the Harrison Narcotic Law, and for violating the Volstead Act when the same was offered. Under the appellant's plea of self-defense, testimony showing that S. M. Cash bore a reputation for turbulence and violence was relevant and competent. The testi-

mony as to conviction for ·conspiracy was irrelevant. Hence, Exception four cannot be sustained.

As to Exception five: Within certain limits an accused is entitled to introduce evidence of his good reputation, although he is not examined as a witness in his own behalf, and although the doctrine of self-defense does not arise, or though the evidence is direct and not merely circumstantial. Where one does so, the State may introduce evidence in rebuttal, and may cross examine the witness as to his good character; but, except where the character of defendant is an element of the crime charged, and except to the limited extent to which a defendant's reputation may be attacked for purposes of impeachment, when he takes the stand in his own behalf, the State is not entitled to introduce evidence of the bad reputation of the accused unless he has clearly and expressly put his reputation in issue by introducing evidence of good reputation. The rule is, that it is a primary principle in criminal procedure that the State cannot in any way attack the character of the defendant unless that issue is first tendered by the defendant. *State v. Knox,* 98 S. C., 114, 117, 82 S. E., 278; *State v. Frierson,* 132 S. C., 362, 128 S. E., 709; *State v. Ashley,* 128 S. C., 411, 123 S. E., 260; *State v. Bigham,* 133 S. C., 491, 502, 131 S. E., 603.

The record shows that when the witness F. N. Littlejohn was on the stand, the able solicitor, in his enthusiasm, asked this question: "Would you say that Cash's reputation as being a lawless citizen was any worse than that of a man who had been convicted some four or five times for violation of the Prohibition Law, had his sentence commuted by the Governor, had six months given him for violation of the Prohibition Law?"

And the appellant never once offered his reputation in issue. Objection was made to the question; whereupon the trial Judge stated that the solicitor had not asked about the defendant, the Judge stating that if that were the object, it would not be relevant. He later sustained the objection on the ground that it tended to attack the reputation of the

appellant when it had not been put in issue. But the damage was done when the question was asked.

It has been well said that proof of other crimes, or asking a witness in regard to the conviction of defendant of other crimes, tends to prejudice the defendant with the jurors, to draw their minds away from the real issue, and to create the impression that the defendant is of no value to the community, is not entitled to the benefit of the rules prescribed by law, is depraved in character; but that, however full of crime his past life may have been, the defendant is entitled to be tried upon competent evidence, and only for the offense charged. On at least two different occasions, E. B. Bolin had been convicted of violating the Prohibition Law. *State v. E. B. Bolin,* 159 S. C., 369, 157 S. E., 79; *State v. E. B. Bolin,* 164 S. C., 375, 162 S. E., 466. He appealed the cases to the Supreme Court. The Supreme Court sustained each case, and he had served six months for violation of the Prohibition Law.

This question directed the attention of the jurors to the fact that the appellant had been convicted, that his conviction had been sustained, and that he had served his sentence on the chaingang. The question was highly prejudicial, and was in violation of the decisions of this Court. The State, by the question, attacked the reputation of the appellant when he never once tendered it. Therefore, subdivision a of Exception five must be, and the same is, sustained. *State v. Knox, supra; State v. Frierson, supra; State v. Ashley, supra; State v. Bigham, supra; State v. King,* 158 S. C., 251, 285, 155 S. E., 409; *State v. Kennedy,* 143 S. C., 318, 141 S. E., 559; *State v. Benton et al.,* 128 S. C., 97, 121 S. E., 559.

Also, when the witness Joe M. Smith was under cross examination, the solicitor asked him these questions:

"Did you ever get a drink from Bolin? A. No, sir.

"Q. Never bought any from him? A. No, sir."

Here the word "drink" must be construed to mean liquor; and the question intimated a violation of the Prohibition

Law, because the attention of the jury had been called to his convictions for violating the Prohibition Law. These questions placed the reputation of the appellant in issue as being a lawless character in Cherokee County. Therefore, subdivision b of Exception five must be sustained.

And also must subdivision c of Exception five be sustained, for when Olin Vinesette was on the witness stand, the solicitor asked him these questions in speaking of Bolin:

"Did you ever testify for him in Court before? A. No, sir.

"Q. Were you one of the crowd of witnesses in a case against him before?"

As to subdivision d in the fifth exception: When Hoyt Wilson was on the stand he testified that he had seen True and Cash eating together in a restaurant in Spartanburg, and the solicitor asked: "What you saw around there gave Bady Bolin no reason to kill Cash, did it?" While we see no reason for asking the question, we do not see where it was prejudicial. Therefore, subdivision d of Exception five is overruled.

As to subdivision e of Exception five: This goes to the cross examination of the appellant, Bolin. The solicitor, over objection, asked these questions:

"Did you ever throw your gun on a man and try to make him give your money back?"

"Did you ever throw your gun on a man and make him play longer than he wanted to?"

"Do you remember out at your place three years ago playing poker with him (Anson Coy), and he wanted to quit, and you were the loser, and you got your gun and made him continue in the game against his will?"

These questions were highly prejudicial, and by cross examination, the reputation of E. B. Bolin for being a desperate character and a man of turbulence and violence was placed in issue when he had never tendered it. The rule is, that when a defendant becomes a witness in his own behalf, his character as to veracity is thereby uncovered, but not his

general moral character. *Sweet v. Gilmore*, 52 S. C., 530, 30 S. E., 395; *State v. Gibson*, 83 S. C., 34, 64 S. E., 607, 916; *State v. Robertson*, 26 S. C., 117, 1 S. E., 443. A defendant, when sworn in his own behalf, may be asked on cross examination about any of his transactions tending to affect his credibility, but not about such as affects his character in other respects. *State v. Mills*, 79 S. C., 187, 60 S. E., 664. These questions did not tend to impeach his credibility, but they tended to put his general character in issue, and the questions were prejudicial. *State v. Knox*, 98 S. C., 114, 117, 82 S. E., 278; *State v. Marlowe*, 120 S. C., 205, 207, 112 S. E., 921; *State v. Barker*, 128 S. C., 372, 122 S. E., 494. They were asked of the appellant for the purpose of creating in the minds of the jury the impression that he had been a lawless citizen; that he had drawn his gun on other people, and that he had made them stay in games when he was a loser. The questions, therefore, were highly prejudicial. This is sustained. *State v. Gilstrap*, 149 S. C., 445, 147 S. E., 600.

As to subdivision f of Exception five: The same is overruled for the reason that the appellant first opened the subject as to whether or not any liquor was sold at his place on the night of the homicide. The question of the solicitor was, therefore, not prejudicial.

Also, the appellant, E. B. Bolin, was asked on cross examination, "What about this fellow over at Crane's Creek that came over here and beat you out of four or five hundred dollars?" This subdivision of Exception five must be sustained, for the reason that the same was an attack upon the reputation of the appellant, when he had never tendered the same. *State v. Peden*, 157 S. C., 459, 463, 154 S. E., 658; *State v. Gilstrap*, 149 S. C., 445, 147 S. E., 600.

Exception six must be sustained. The appellant was entitled to protection in his trial. He had not offered his reputation in issue, and it was highly prejudicial to ask him if he had ever thrown his gun on a man for the purpose of making the man give his money back, or if he had ever

thrown his gun on a man to make him play longer, or if he had ever thrown his gun on Anson Coy. Appellant's attorneys asked the trial Judge to rule, and to instruct the solicitor that he must conform to the rule. The defendant was entitled to this; and since he never tendered his reputation, when the State sought to put it in issue through cross examination, the same was highly prejudicial.

Exception seven alleges error on the part of the trial Judge in not admitting the testimony of Sherwood Smith. Mr. Smith came up some time after the shooting, and after Ed Bridges had passed in his car. The trial Judge held that this testimony was not a part of the *res gestæ*. Whether or not matters are admissible as part of the *res gestæ* depends, in a great measure, on the circumstances of each case, especially in regard to matters of time and other elements. Therefore, a certain measure of discretion is vested in the trial Judge. *State v. Lindsey,* 68 S. C., 276, 47 S. E., 389; *State v. Way,* 76 S. C., 91, 56 S. E., 653; *State v. Gardner,* 83 S. C., 476, 65 S. E., 630. And this discretion will not be disturbed unless it be shown that there was a clear abuse of the same. In this case we do not see any abuse, so Exception seven is overruled.

Exception eight deals with certain testimony in the case. While Sherwood Smith was on the witness stand he testified that when he drove up at the place of the homicide, the appellant, E. B. Bolin, made a statement to him. He stated that as a part of that statement he used the word "double-crossed." The trial Judge held that he could not repeat the entire statement because it was not a part of the *res gestæ.* The solicitor, however, on cross examination asked this:

"He made the statement that he had been 'double-crossed'? A. Part of it.

"Q. The words he used were 'double-crossed.' A. Part of it."

On re-direct examination Mr. Southard asked: "Now what was the balance of the statement?"

The solicitor objected, and the trial Judge sustained the objection. We thus have the anomalous situation of only a part of the statement being brought out with the word "double-crossed" being used; whereas, the appellant was entitled to have the whole of the statement brought out. Particularly prejudicial was this ruling when we consider the argument of the solicitor when he said: "Bolin said, 'they double-crossed me.' The only double-crossing there could have been was in that poker game when Bady lost a few dollars. * * * 'I have been double-crossed,' 'double-crossed,' he says."

Exception eight is sustained.

Exception nine: Anson Coy was called as a witness, and in the presence of the jury the solicitor asked him this question: "Mr. Coy, I asked Bady Bolin on the stand in substance, if, while you and he were engaged in a poker game at his place about three years ago, after you had won and he had lost, you wanted to quit the game, and he laid his gun down and made you continue against your will."

The question was objected to, and the trial Judge sustained the objection on the ground that the same was a collateral matter. This then occurred: The solicitor stated in the presence of the jury: "Here is the purpose of it, your Honor: the purpose of it is to show that this is Bolin's game, that he is a hard loser, and that the same thing he did then he did on this night. Shows the kind of loser he is. Oh, I withdraw the question in view of your Honor's ruling."

The solicitor's duties are *quasi*-judicial. *State v. Bethune,* 104 S. C., 353, 89 S. E., 153. Under no circumstances could the testimony have been admitted for the reason that it did not tend to affect the credibility of the witness. Such testimony tended to subject the defendant to a penal liability, or to some kind of punishment, or to a criminal charge, and because the appellant had not put in issue his character. *State v. Knox,* 98 S. C., 114, 118, 82 S. E., 278. And to

have asked this question in the first instance, and to have stated the purpose of the same in the second instance after the trial Judge had ruled, was highly prejudicial. The solicitor could not withdraw the question for the reason that the damage to the appellant had already been done. The rule is clearly stated in *Horsford v. Carolina Glass Company*, 92 S. C., 236, 75 S. E., 533, and also restated in the case of *Rivers v. Industrial Life & Health Insurance Company et al.* (S. C.), 179 S. E., 793, 794, April 27, 1935, and is as follows:

"The general rule is indisputably established that, when in the course of a trial incompetent statements of witnesses are brought in either from accident, or when they might be reasonably, though erroneously, thought by counsel to be competent, the only remedy that the Court can afford is to grant a motion to strike out and instruct the jury to disregard the testimony. The injury resulting from the jury having heard the incompetent statement is regrettable, but the trial cannot be estopped because of such accidents and mistakes liable to occur in every trial.

"But when testimony manifestly incompetent and prejudicial is adduced for the purpose of having such testimony influence the jury, the party who adduces it will not be allowed to hold his verdict and assert that the Court can do nothing against the unfair advantage of having the statement before the jury, beyond striking it out and instructing the jury to disregard it. In such case it does not lie in the mouth of the offending party to say that, although he has brought in irrelevant and prejudicial testimony, the Court cannot entirely deprive him of the benefit of it. It makes no difference that defendant's counsel did not move to strike out the testimony. Had the motion been made and granted, the plaintiff would still have had the unfair advantage of having testimony before the jury which he ought not to have offered. Justice can be satisfied only by the complete relief of a new trial. Reference to the subject in the argument was still more objectionable."

To like effect, see *Edwards v. Union Buffalo Mills Co.,* 162 S. C., 17, 159 S. E., 818; *State v. Bigham,* 133 S. C., 491, 502, 131 S. E., 603. Exception nine must be sustained.

The tenth exception has to do with a statement of the trial Judge to the defense attorney. During Mr. Southard's argument to the jury, he referred to the fact that T. W. True, Jr., had been arrested in Greenville; that he had cross examined him as to a contemplated holdup of a cotton mill pay roll; that True had denied the same. At this point the trial Judge remarked to Mr. Southard, "And you had no evidence, either." This remark constitutes the basis for the tenth exception, it being contended that the Judge thereby made himself a participant in the determination of the facts in violation of Article 5, § 26 of the Constitution of 1895.

Under the power of the Court to control the argument of counsel, and to keep the same within the proper limits, the trial Judge has the right to see that counsel, in his enthusiasm, does not go out of the record. True denied that he intended to participate in a holdup, and there was no evidence on this point. It was, therefore, correct for the trial Judge to remind the attorney representing the appellant that there was no evidence in the record. This is all that he did, and this would not make him a participant with the jury in determining the facts. Hence, the mandatory provision of Article 5, § 26, was not transcended. Exception ten is overruled.

Exception eleven charges error on the part of the trial Judge in not setting the verdict aside because the same was inconsistent with the law of the case, and the facts.

Having disposed of the other exceptions to the case, it is unnecessary to consider the eleventh exception.

As to the exceptions to the appendix:

Exception one charges error on the part of the trial Judge in striking from the statement certain portions. We find no error, and this exception is overruled.

As to Exceptions two and three of the appendix: The transcript of the record shows that the question was asked

once. Judge Dennis had before him the affidavit of L. G. Southard, an attorney for the appellant, showing that the objectionable question was asked of the witness, F. N. Littlejohn, twice. We have already held in discussing Exception five that the asking of the question once was highly prejudicial, and that that alone is sufficient to give the appellant a new trial. It is therefore unnecessary to further consider Exceptions two and three to the appendix.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Mr. Acting Associate Justice T. S. Sease concurs.

Mr. Chief Justice Stabler, Mr. Justice Carter and Mr. Acting Associate Justice A. L. Gaston concur in result.

Mr. Acting Associate Justice A. L. Gaston (concurring in result) :

The leading opinion by Mr. Justice Bonham is such a clear and conspicuous exposition of the law relating to the issues in this case as to make it impossible by further comment to add thereto. It is the opinion of the Court that a new trial must be granted for the cogent reasons stated as to Exception five, subdivisions (e) and (f) and Exception six, all of which relate to the cross examination of the defendant, E. B. Bolin; and this also applies to Exception eight; all of these exceptions are unanimously sustained.

I feel that a distinction can be made in regard to the other exceptions, which are directed to the remarks of the solicitor and to the cross examination by him of the other witnesses. These questions are raised by Exceptions five (a), (b) and (c) as to the cross examination by the solicitor of the witnesses Littlejohn, Joe M. Smith, and Olin Vinesette, and by Exception nine as to the examination of Anson Coy as a witness. The issues raised by these exceptions refer to matters which in some cases might be

held to be harmless and not prejudicial. But when these matters are considered in connection with the cross examination of the defendant as a witness, the innuendo renders it more harmful. The trial of a hard fought cause calls forth many statements and remarks of counsel in the heat of the controversy which may not be sufficient to justify a new trial; this is especially true when such remarks are induced by the impetuosity of opposing counsel. Often some allowance may be made for conditions due to the zeal of earnest lawyers, especially when the admission of such testimony is largely within the discretion of the presiding Judge. *State v. Petit,* 144 S. C., 452, 142 S. E., 725. I think that these exceptions last mentioned, standing alone, would not of themselves show reversible error, and that it is permissible to call attention now to this point of view, as it will be necessary for a new trial to be granted, and for the same ground to be gone over again before another jury, where the Circuit Judge will meet many of these same difficulties, unless counsel on both sides exercise more restraint on their part.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER concur.